STEPHEN H. WILLIAMS, plaintiff in error, *vs.* JAMES D. GREEN, defendant in error.

When the facts of the case do not give to the complainant a legal or equitable right to dispossess the defendant, and to have the premises, etc., put into the hands of a receiver, and the Judge grants an injunction, appoints a receiver, and he takes possession of the premises, etc., this Court will direct the Judge below to rescind his order appointing the receiver, and to order the premises, etc., restored to the defendant.

Further, should the Judge below retain the injunction, he must so mould it as to limit it to restraining the defendant from removing the cotton in question to any other places besides those mentioned in the contract on that subject, and from removing it to them for any other purpose than to comply with his contract.

Equity. Injunction and Appointment of Receiver. Decided by Judge VASON. Chambers, Lee County. November Term, 1867.

This case is bottomed on the following contract:

"GEORGIA, LEE COUNTY: It is hereby bargained and agreed upon the part of James S. Green, of said county, that Stephen H. Williams, of said county, is to have the right to select four hundred acres of open land on the plantation of said Green, not including the dwelling of said Green ; said Williams to have as many of the negro cabins on said plantation as he may have use for, and to have the house wherein Elisha Smith, on said plantation, now lives, for the year 1867, and also for the same term, to have the use and full control of six of said Green's mules, two of his, said Green's wagons, and all harness and plantation tools and agricultural implements, all to be returned by said Williams to said Green, at the end of the year (1867) eighteen hundred and sixty-seven, in like order and repair as they were placed in the possession of said Williams.

Said Williams is also to have all of the cotton seed (a few wagon loads excepted) which may be raised on said plantation of said Green the present year, 1866, and to return to said Green all of the cotton seed which he, said Williams, may raise on said four hundred acres of land the next year,

1867.   Said Williams to plant as he may choose, said Green agreeing to leave said Williams as much corn as said Williams may need for the purpose of supporting himself, stock and hirelings, in the cultivation of said four hundred acres of land for the year 1867, said Williams agreeing to return to said Green at the end of the year 1867, the same amount and quantity of corn.

And in consideration of all this, it is agreed on the part of said Williams to deliver to said Green, of the first cotton he may make, (48) forty-eight bales of cotton, weighing five hundred pounds each, at Albany or Americus, Georgia, or at any intermediate depot on the South-Western Railroad between said Albany and Americus, as said Green may direct or require ; said Williams also agreeing to return to said Green, his, said Green's entire plantation (it being the same on which said Green now lives in said county, and out of which said Williams is to select said four hundred acres) in good repair as to fencing.

If any of the said six mules die, said Williams is to pay to said Green the value thereof.

JAMES S. GREEN,<br>STEPHEN H. WILLIAMS.

*Test:* K. J. WARREN.   November 15th, 1866."

Green averred in his bill that, under this contract, Williams took possession of said premises, and Green complied with all that was required of him under the contract, and Williams has made about, or quite sufficient by farming under said contract, to enable him to comply therewith.

Williams paid Green one bale of cotton weighing 450 pounds, but fraudulently intending to keep Green from having the forty-eight bales first raised on the farm, Williams has taken two of such bales to Wooten's Station on said railroad with intent to send them to market, and Green is apprehensive that he will be defeated of his rights under the contract, unless Williams is restrained from removing the same.

Four of said mules are dead, and Williams, therefore, owes Green their value.   No quality of cotton is specified and no price agreed on, and this uncertainty gives equity jurisdic-

tion. If Williams has any property other than the produce of said farm, Green is not aware of it, and charges that it will require all of said produce to pay him. By reason of Williams' disposition towards him, etc., Green fears that Williams will cease to attend to the farm and let the produce waste, etc.

The prayer was, that Williams be restrained from removing said cotton, or any of said produce from the farm, except by delivering it in discharge of his contract, until the same is discharged, and for a receiver to take possession of the farm and gather the produce, and pay the same to complainant in payment of his said claim and for general relief.

On the 8th October, 1867, Judge VASON granted an injunction to last till the hearing, and a rule requiring Williams to show cause on the 18th October, 1867, why the bill should not be sanctioned, etc.

The defendant answered that he found it so difficult to procure hands, that up to the end of January, 1867, he had but six, and with them was unable to attend more than half of the rented land. He went to tell Green of this and abandon the contract. Necessary farming tools had not been furnished him, but recollecting that they had spoken of the embarrassment, etc., before the contract was signed, and that Green had said to him to go on and do the best he could, he did not tell Green, nor make the proposition to abandon the contract. Green had furnished him but one wagon (and that a two-horse wagon) for a part of the year, and Green borrowed it in May and broke it so as to render it useless ; he had furnished him with no harness, tools or agricultural implements of any value to him, except the cotton gin and screw. Complainant used his large wagon at his steam mill, and let out his harness, tools and implements to other persons. This put upon defendant unnecessary expense, exhausted his means and caused some of his hands to quit. Complainant took the cotton seed of 1866, and left not enough to plant and for manuring corn lands, and defendant was thereby compelled to haul cotton seed. Complainant only furnished corn for defendant's plough stock, and some corn for bread and meal, and this

supply gave out by the first of June, 1867, complainant would buy no more, and thus forced defendant to buy western corn at $2.50 per bushel, (and secure the payment by mortgaging his crop) and then haul it sixteen or eighteen miles. Thus he hauled in a two-horse wagon, about one hundred and fifty bushels at a time, when all hands ought to have been in the farm, and this supply lasted only till the middle of August. He charges that complainant's hands and his had wrangled and quarrelled, and part had quit him, and the complainant had opportunity so to do, and he believed he had, tampered with defendant's hands to induce them to quit him for the purpose of getting a receiver appointed. Defendant had made eight hundred bushels of corn, and had one hundred and fifty other bushels which had rotted in the fields for want of means of transportation ; the cotton crop was not yet gathered ; complainant had estimated it at seventy-five or eighty bales, but defendant did not believe there would be so much.

He sent the two bales, packed, to market, not to defraud Green, but to purchase bacon for the hands. Besides, Green was not entitled to the first forty-eight bales made, but to forty-eight bales "of the first cotton," i. e., of the crop of 1867. Complainant had at night, and without authority, put his name on these two bales, but defendant erased it and turned over the cotton in payment for supplies, and the cotton remained at Wooten's station a week or more with complainant's knowledge, before it was shipped, and that too, because complaint objected to its being shipped.

He admitted that if he were compelled to pay forty-eight bales, etc., he could not pay his debts, but insisted that by reason of the facts aforesaid, complainant's claim should be greatly reduced, and then he could pay. Besides, complainant knew defendant's pecuniary condition when the contract was made, and cannot now make his insolvency the basis for this case. He averred that he had not had at any time any other intention than honestly to pay what in equity he owed complainant.

Before this answer was made, to-wit : on the 18th October, 1867, the Judge passed the following order (upon what

kind of showing, whether *ex parte* or with notice, does not appear) :

"It being represented to the Court that the cotton crop, the subject matter of this dispute, is wasting, and being seriously injured from want of attention : It is ordered by the Court that Philip S. Hale be appointed temporary receiver to take charge of, manage and gather the cotton crop on the plantation rented by Stephen H. Williams from James S. Green, in Lee county, with full power to hire labor, use such corn of said Williams as may be necessary to keep up the stock, to take charge of the stock, mules, and all other plantation implements or appliances necessary to said object, until the hearing of the application of said complainant for the appointment of a receiver in said case. And it is further ordered, that the hearing of the motion for injunction and the appointment of a receiver in said case be postponed until Saturday, the 26th day of the month, at Albany, Georgia."

On the 21st October, 1867, Hale declined to act as such receiver.

Complainant amended his bill, by charging that said first forty-eight bales of cotton were worth at least $2,400.00, and perhaps more, that owing to the waste, mismanagement and neglect of Williams, he had reason to believe, and did believe and charge, he would not get anything like said number of bales, and feared he would get none, unless further mismanagement was restrained. He thought that if it were put into careful hands, a large part, if not all, of his debt might be saved.

It was further charged therein, that he had furnished Williams with twelve hundred bushels of corn worth $1,800.00, or some such sum, and that by proper management, two thousand bushels of cotton seed, worth $400.00, ought to have been made on said place.

This amendment and the answer each were verified on the 26th October, 1867, but no hearing was had until the 6th November, 1867.

At the hearing, the Judge had before him the bill and amendment, the answer and certain *ex parte* affidavits of the substance, and by the affiants following :

ABRAHAM G. W. WILLIAMS, of said county: He cultivated a portion of said James S. Green's plantation, moved there in November, 1866. Out of the cotton seed made in 1866, Green furnished him about one hundred bushels to plant, and about two hundred and fifty bushels for manure, also with corn for two plough animals, up to corn harvesting. From the time Stephen H. Williams moved on said plantation, Green had but one crib with corn in it on the plantation. Green also furnished affiant with two sets of plough gear, about the last of October, 1866, to use on that part of the plantation rented to him, and cotton seed for manure for the place rented for 1867, and when affiant went for the cotton seed, he hauled them off without asking defendant anything, not supposing that defendant had anything to do with it.

E. B. SMITH: He rented a part of Green's farm in 1866, all the corn raised on said plantation in 1866 belonging to Green, was put into one crib, out of which Green fed four oxen and about six other animals of his own, and the stock of two freedmen who lived on the place before Christmas, 1866; one-half of the cotton seed raised on that plantation in 1866, was his, and half Green's; out of his, affiant's share, Hardy Morgan bought and paid for two hundred and fifty-one bushels, and hauled them off. This sale was about the middle of January, 1867.

JESSE LEE and PLEASANT PAUL, freedmen: that "the talk of Green and his way of treating" defendant's hands, caused them both to quit, and all the hands would have quit had not defendant made arrangements to get affiants back and keep the others.

JOHN W. BRYAN: heard Green say he had eight hundred bushels of corn in his crib last Christmas, and feared he would not have that much Christmas, 1867: had seen Green's oxen fed out of the crib after defendant took control of the crib and corn, and saw Washington Williams haul corn from said lot and crib, and had heard complainant say defendant would make eighty bales of cotton on said plantation.

GRIFFIN H. CULPEPPER: cultivated in 1867, a part of

Green's plantation, and defendant another part, each having moved to it about Christmas, 1866. Defendant bought of E. B. Smith four plough stocks and two ploughs; defendant also bought six pairs of new traces and four pairs of new harness about the last of January, 1867; he said he bought them in Americus. It was difficult in January, 1867, to find there gearing for a two-horse wagon. Harry, a freedman, cultivating part of that farm, hauled from Green's gin house two two-horse wagon loads of cotton seed to plant for himself; on Thursday, (before he swore) in presence of W. K. Stansel, John F. Grimes, S. E. Green, complainant's son, S. H. Williams, affiant and some little boys, S. E. Green read over an affidavit of John F. Green, to be used in this case, and said he did not know how much corn was turned over by James S. Green to defendant, or whether any was, he was not on the place at the time and did not know that corn was wasted by defendant; after affiant went to work for defendant, he fed the stock, and his orders were if any corn was left after the mules ate, to gather it up and put it back in the crib, and he did so.

WILLIAM B. PAUL: in May, 1867, defendant told him he had corn, and could not keep it, though every night his crib was locked and the key taken into the house and kept there till next morning.

*Per Contra.* ALEXANDER G. W. WILLIAMS swore: that when defendant took possession of the place, there were there seven or eight hundred bushels of corn; defendant had not attended to business as affiant would have done, were he in his place, and was not making any effort to gather the crop he had made, and had damaged complainant "to a very great extent by his neglect," and that he tried to buy cotton seed from the place from Green, but Green told him he must apply to defendant.

W. K. STANSEL: defendant "proposes" to E. B. Williams to let him have one hundred and twenty-seven bushels of corn, and E. B. Williams wished Stansel to have them, and defendant said he would deliver them at any time, and they would have been delivered but for complainant being opposed

to the corn being sold off from the place. (No date is given to this transaction.)

G. H. CULPEPPER: on the 1st of January, 1867, he went to complainant for two mules and a two-horse wagon, and complainant said he considered them defendant's and Culpepper's for that year; he said he had corn enough in the crib to run his farm. Affiant was on the place 19th October, 1867, and did not consider it properly cultivated; there appeared to be a waste for want of gathering the corn and cotton, and no effort was being made to gather it; from what he had seen he did not believe complainant could get his rent. He heard defendant tell complainant that he was not willing to be taxed with repairing the wagons when others borrowed and broke them, and complainant said they were his, and he could take them and take care of them. This was in the last of January, 1867.

ASBURY M. KILBY: knew that defendant was in possession of the rented premises and the dwelling house occupied in 1866 by Elijah Smith, sufficient negro houses, to-wit: all of the negro cabins except those in Green's yard, and two outside of it, and controlled all the stock and everthing except one horse. Defendant took into his possession about one thousand bushels of corn and six mules. Defendant was careless and indifferent about gathering the crop, is frequently absent, and though he has a white man on the premises, this man is but a laborer, and not a superintendent. Under present management, not more than twenty bales of cotton can be made, but under proper management, there would be thirty-five bales. Affiant would not give the corn defendant received for the present crop.

STEPHEN E. GREEN: was familiar with the rented premises and defendant's management of them. Defendant had "extravagantly mismanaged" affairs, was frequently absent, sometimes as long as about ten continuous days, leaving the hands, etc., without superintendence, and that, too, in the critical times of the crop; skillful management would have produced seventy bales of cotton. Forty bales might yet be saved by good management, but defendant shows no disposi-

tion to gather the crop, and affiant believed that he would not not gather ten bales. He heard defendant say he had whipped two of the female negro hands, and at another time he pulled a board off the crib and wore it out over a female negro hand named Preen, and she left the place.

Defendant also read two *ex parte* affidavits in substance, as follows :

SIDNEY L. MATTHEWS: worked for defendant on said premises, and while there he heard complainant tell defendant that he, complainant, knew that defendant could not get sufficient hands to cultivate the premises as they ought to be cultivated, but he should go on and do the best he could, and he, complainant, would do all he could for defendant, and do what was right about the rent of the place. Green's oxen and his son's stock hogs (or a part of them) were fed out of the only crib of corn as long as any corn was there.

ZACHARIAH PARKER: worked as a laborer for defendant on the rented premises, from the 1st March, till in July, 1867 ; the corn crib was within seventy-five yards of complainant's home, and a half mile from defendant's home. When affiant went there, there was not more than two hundred and fifty bushels of corn, defendant fed out of it five or six mules, at no time more than six, and about ten hands; out of it, also, six oxen used by Green at his steam-mill, (four of them all the time) and two horses were fed three times a day, and his cows eat from it till the first of April. The corn gave out in May, and defendant bought and hauled more from Americus, taking a day and a half, and sometimes two days for a load. Before this, defendant got some meal from said steam-mill. The negro cabins were near Green's residence, and affiant heard Pleasant Paul and Jesse Lee, two of defendant's laborers, and good ones, say they would quit the place if Green did not quit bothering and interfering with defendant's hands.

Defendant got no cotton seed from Green except to plant, and not sufficient for that, he hauled planting seed from his own place, a distance of several miles. Wash. Williams, who cultivated part of Green's land, hauled cotton seed from the

gin house for manure, and Tom Walker and Harry Walker, freedmen, cultivating other parts of it, the one with six hands, and the other with three hands, hauled cotton seed for planting.

A part of the time, complainant had used the two-horse wagon for a fishing excursion and broke it down, and defendant had to use his own in lieu of it, and complainant used his own large wagon to haul lightwood to the steam-mill.

While affiant was at work on the premises, no corn was wasted, but defendant himself was careful, and charged the hands to be so with the corn.

The Judge granted the injunction and appointed William D. Green as receiver as prayed for in the bill.

On the 8th of October, defendant excepted to that action of the Judge, and superceded the judgment by affidavit *in forma pauperis.*

These facts having been brought to the knowledge of the Judge, he ordered that "said receiver take charge of said property, and use all necessary means to gather and secure the crop under the supervision of the Court, until the decision of the Supreme Court be had, and if said decision is adverse to the opinion of this Court, then said property shall be turned over to said defendant, and if not, (the receiver) to hold the same subject to the further order of this Court."

To this order defendant's solicitors excepted, but the Judge said he would not certify it, as it was not a "final decision," such as would sustain a bill of exceptions.

The granting of the injunction, and appointment of the receiver, and the putting the receiver into possession after the *supersedeas*, are each assigned as error.

WEST, KIMBROUGH and W. A. HAWKINS, for plaintiff in error.

C. T. GOODE, for defendant in error.

HARRIS, J.

The contract in this case is in writing. It is for the rent of the land of Green for the year 1867, by Williams. Green,

Williams *vs.* Green.

dissatisfied with the management and bad faith, as he alleges, of Williams, filed his bill and prayed an injunction to restrain Williams from carrying off the cotton made on the land out of which he, Green, was to have so many bales, and for the appointment of a receiver to enter upon and take possession of the land and the ungathered crop, etc.

Green has a right to a correct and fair enforcement of the contract of Williams, but no more. Williams, by the contract, had the right to carry the cotton made on the land, to *certain points*, for the purpose of fulfilling it, and Green none to prevent or restrain Williams from so doing.

Upon what legal or equitable principle, springing from the contract of the parties, Williams was dispossessed of the control of the land, and the gathered and ungathered crop placed in the hands of a receiver, we are at a loss to discover. It appears to us that such an exertion of authority by the Court below, is much beyond the redress that Green is entitled to. We, therefore, reverse the judgment appointing a receiver, and direct Green to be restored to all the rights of which he was dispossessed, and should the Judge below continue the injunction granted by him, that it be so modified as not to prohibit Williams from carrying the cotton made on the land to any of the points specified in the contract, and for the purposes therein mentioned.

Judgment reversed.